UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2003 DEC 15 A 8:33    C. A. NO.

BOWEN INVESTMENT, INC., and
HONEY DEW ASSOCIATES, INC.

    Plaintiffs,

v.

S.G.B., LTD.,
GUY BISSONNETTE,
GARY GREAVES, and
ROGER A. SPINA,

    Defendants.

03 - 12509 PBS

MAGISTRATE JUDGE Bowler

AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FbM
12-15-03

## VERIFIED COMPLAINT

### JURISDICTION

1. The jurisdiction of this Court is based upon 28 U.S.C. §1338 (a) and (b) as this action relates to Defendants' unauthorized use of certain trademarks and Defendants' unfair competition related thereto. The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051-1127 (1982), specifically §§ 1114(1) and 1125(a). The Court has supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

### THE PARTIES

2. Plaintiff Bowen Investment, Inc. ("BII") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business at 2 Taunton Avenue, Plainville, MA. At all times relevant hereto, BII was the tenant of real estate at 343 Providence Street, Warwick, RI (the "Premises") pursuant to a Lease dated July 31, 1997.

3. Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts. At all times relevant hereto, HDA has been in the business of franchising donut and coffee shops known as Honey Dew Donuts® Shop.

4. Defendant S.G.B., Ltd. ("SGB") is a Rhode Island corporation with a place of business at 343-345 Providence Street, Warwick, RI.

5. Defendant Guy R. Bissonnette is a citizen of the state of Rhode Island residing at 443 Park Avenue, Portsmith.

6. Defendant Roger A. Spina, Jr. is a citizen of the state of Rhode Island residing at 20 Lodgepole Lane, Smithfield.

7. Defendant Gary Greaves is a citizen of the state of Rhode Island residing at 67 Greenpost Lane, Warwick. At all times relevant hereto, the individual defendants were the owners of SGB.

## BACKGROUND

8. At all times relevant hereto, HDA has been and continues to be the owner of several United States trademarks and service marks, all on the Principal Register, and certain state trademarks and service marks registered in Massachusetts, Rhode Island, Connecticut and New Hampshire, including those set forth in Exhibit "A" hereto (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks").

9. A franchise of a Honey Dew Donuts® Shop, in relevant part, includes providing the franchisee with a license to utilize methods of production, merchandising, display and advertising methods, including the use of specifically designed buildings, equipment accessories, identification schemes, products, management programs, standards, specifications and proprietary recipes, production techniques, the Marks and goodwill (collectively, the "Honey Dew System").

10. At all relevant times hereto, BII and HDA have agreed that BII may act as a subfranchisor for the purpose of franchising certain Honey Dew Donuts® Shops in Rhode Island.

**The Franchise Purchase**

11. BII was the tenant of real estate at 343 Providence Street, Warwick, RI (the "Premises") pursuant to a Lease dated July 31, 1997. In 1998, BII prepared the premises for operation as a Honey Dew Donuts® Shop, including the purchase and installation of equipment, purchase and installation of signage, and interior and exterior construction and finish work.

12. On or about December 17, 1998, BII granted SGB a franchise to operate a Honey Dew Donuts® Shop at 343-45 Providence Street, Warwick, RI, pursuant to a Franchise Agreement, an Addendum to Franchise Agreement, and a Sublease, copies of which are attached hereto as Exhibit "B" (collectively, the "Franchise Documents").

13. Pursuant to a Liability Agreement dated December 17, 1998, a copy of which are attached hereto as Exhibit "C", the individual defendants, jointly and severally, agreed to be liable to BII for all obligations of SGB pursuant to the Franchise Agreement.

3

14. Pursuant to the Franchise Documents, defendants are required to make by Friday of each week, weekly payments to BII for the week ending the preceding Sunday, as follows: (i) A royalty payment of 7% of gross sales; (b) an advertising fund fee payment of 2% of gross sales; (c) a rent payment of 10% of gross sales; and (d) a Service Fee of $200.00. (See Exhibit "B", Section II).

15. In relevant part, Section XXV of the Franchise Agreements provide that they were signed in Massachusetts and are to be interpreted and governed pursuant to the laws of the Commonwealth of Massachusetts, that claims arising out of or relating to the Agreements shall be submitted, at BII's option, to the jurisdiction of the Courts of the Commonwealth of Massachusetts and that Defendants waive any rights to the adjudication of such claims in any other jurisdiction. In addition, the Agreement provides that the application of the laws of the Commonwealth of Massachusetts shall be "without regard to the conflicts of laws provisions thereof".

**Defaults and Termination**

16. In April 2003, Defendants stopped making the above-mentioned required payments to BII.

17. On June 2, 2003, a Notice of Default was served on SGB for failure to make the required payments (a copy of which is attached hereto as Exhibit "D"). Defendants did not cure the Default within the time specified in the Notice of Default and the Franchise documents. On June 30, 2003, a Notice of Termination was sent to Defendants (a copy of which is attached hereto as Exhibit "E").

18. Subsequent to SGB's receipt of the Notice of Termination, president Roger Spina requested that defendant's franchise be reinstated. Plaintiffs' counsel

4

drafted a Reinstatement Agreement and mailed it to SGB on July 25, 2003. Defendants did not sign the Agreement, but continued to operate the franchise.

19. On August 29, 2003, Plaintiff BII filed a Complaint in Norfolk Superior Court, Civil Action No. 03-01649, to require the Defendants to make timely reporting of gross sales and timely payments and to request amounts due and owing.

20. On November 5, 2003 and November 12, 2003, Notices of Default were sent to SGB (See attached Notices of Default attached hereto as Exhibit "F" and Exhibit "G").

21. On November 24, 2003, a Notice of Termination of the franchise was sent to SGB (See Notice of Termination attached hereto as Exhibit "H"), due to (i) its failure to make timely payments to Plaintiff BII, (ii) its failure to meet equipment, health and safety standards set forth in the applicable Franchise Agreement (See Exhibit "B", Section VII) and the Operational Excellence Procedure Manual, and (iii) due to multiple defaults. On December 10, 2003, a Confirmatory Notice of Termination was forwarded to SGB (See Confirmatory Notice attached hereto as Exhibit "I").

22. On or about December 1, 2003, a Cease and Desist letter was forwarded to SGB (a copy of which is attached hereto as Exhibit "J"). As of this date, defendants have failed to terminate its operation of the franchise kiosk at 343 Providence Street, Warwick, RI or return the Operational Excellence Procedure Manual, as required in the Franchise Agreement.

## COUNT I- TRADEMARK CLAIMS AND INJUNCTIVE RELIEF

23. Plaintiff repeats and reavers the allegations of paragraphs one through twenty-one of the Complaint as if expressly rewritten and set forth herein.

24. In relevant part, pursuant to Section XXI(A)(1) of the Franchise Agreements, upon termination, Defendants are required to immediately discontinue the use of all Marks.

25. Following termination, Defendants continued to operate at the Warwick, RI location under the Marks and have continued their operations under the signs of HDA.

26. On or about December 1, 2003, BII forwarded to Defendants a Cease and Desist letter, a copy of which is attached hereto as Exhibit "I".

27. Defendants failed to either acknowledge or comply with the Cease and Desist Letters or to cease operations under the Marks and signage of HDA.

28. In relevant part, section XXI(A)(1) of the Franchise Agreements provide that, upon termination, the franchisee's "continued use of the Proprietary Marks licensed hereunder including, without limitation, the name "Honey Dew Donuts®" shall constitute willful trademark infringement . . ."

29. Use of HDA's trademarks by Defendants after termination is a violation of the Franchise Agreements and constitutes an intentional misuse of HDA's trademarks with the intent to deprive Plaintiffs of their rightful profits and goodwill and to mislead and confuse the public as to the nature and origin of donut and other products being sold by Defendants.

30. Despite receipt of the Notices of Default, the Notices of Termination, and the Notice to Cease and Desist use of the HDA Marks, the Defendants have continued to

6

hold themselves out to the public as an authorized Honey Dew Donuts® Shop, have not ceased use of the name, logos, signage, advertising or other property subject to the agreements concerning the use of HDA's Marks and have otherwise failed to comply with the termination provisions of the Franchise Agreements.

31.     Defendants continued use of HDA's Marks, subsequent to termination, constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), Massachusetts trademark law, Mass. G.L. c. 110B, §11-13, unfair competition law, and is an unfair and deceptive trade practice pursuant to the provisions of Mass. G.L. c. 93A.

32.     Defendants have misappropriated HDA's Marks with the intent to cause mistake and confusion, and said acts constitute unfair competition and an infringement of HDA's common-law and statutory rights in its trademarks. Defendants' actions are a fraudulent attempt to mislead the public into believing that the goods sold by Defendants were made by, approved by, and/or authorized by HDA and to reap the benefits of such association.

33.     Plaintiffs have no adequate remedy at law and they and their other franchisees will suffer irreparable harm by Defendants' continuing to hold themselves out as a licensed operator of Honey Dew Donuts® Shops in violation of said Franchise Agreement. At all times relevant hereto, BII was the tenant of real estate at 343 Providence Street, Warwick, RI (the "Premises") pursuant to a Lease dated July 31, 1997.

34.     By reason of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation and goodwill, have lost sales and profits, as well as the benefit of their respective Franchise Agreements, which have

been violated by Defendants, and have incurred counsel fees for which Defendants are liable pursuant to the applicable contracts and applicable statutes and common law.

35. Pursuant to Sections XXI(A)(5) of the Franchise Agreement, Defendants are required to return to BII the Operational Excellence Procedural Manual.

36. The Operating Manual and other proprietary papers contain confidential and proprietary information concerning operations of the Honey Dew system. Plaintiff will suffer irreparable injury if said documents are not returned.

37. In relevant part, Section XXI(C) of the Franchise Agreements provide that BII is entitled to recover all costs and expenses, including reasonable attorneys' fees, incurred in enforcing the Franchise Agreements.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A. Enter a Preliminary Injunction requiring Defendants to peaceably and forthwith tender possession of the Premises to BII;

B. Enter a Permanent Injunction enjoining Defendants, their agents, officers, directors, representatives, servants, employees and all other persons in active concert or participation with any of them from using HDA's Marks or any reproduction, counterfeit, copy, or colorable imitation of said Marks in connection with the manufacture, holding for sale, sale or otherwise moving or disposing in any manner of any donut and coffee shop products or services or in any way misleading the public and its customers that its products and/or services are connected with Honey Dew Donuts®;

C. Order to return to the Plaintiffs the Operational Excellence Procedure Manual and all proprietary papers relation to the operation of the Honey Dew system;

8

D.     Assess and award damages for the period of willful trademark infringement, including Defendant's profits, such other punitive, compensatory and/or exemplary damages as the court may deem just, plus interest, counsel fees and the costs of this action; and

E.     Grant judgment for each Plaintiff against Defendants jointly and severally in such sums as the Court deems just and proper, together with interest, counsel fees and the costs of this action;

F.     Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT II- POST TERMINATION DAMAGES

38.     Plaintiff repeats and reavers the allegations of Count I of the Complaint as if expressly rewritten and set forth herein.

39.     Pursuant to Section XXI(B)(2) of the Franchise Agreement, "All other payments which would have come due during the term of your Franchise Agreement ("Installment Payments"), but for the termination, shall continue to come due as if this Agreement had not been terminated including, without limitation, royalty payments . . ."

40.     Pursuant to Section III(A) of the Franchise Agreement, the term was to expire in December 2008.

41.     Pursuant to Section II(B) of the Franchise Agreement, Defendants owed BII a weekly Royalty payment of seven (7%) per cent of gross sales. Pursuant to Section II(C), a copy of which is attached hereto as Exhibit "B", Defendants are also obligated to pay a weekly payment of two (2%) per cent of gross sales to HDA's Advertising Fund.

9

42.  Pursuant to Section XXI(B)(2) of the Franchise Agreement, BII's damages for weekly Royalties shall be based on the average of weekly gross sales for the calendar year ending prior to termination.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

A.  Determine the post-termination amounts due to HDA pursuant to the Franchise Agreement;

B.  Enter judgment against Defendants for the post-termination sum due, plus costs of collection and counsel fees; and

C.  For such other relief as may be deemed just.

                          BOWEN INVESTMENT, INC.,
                          HONEY DEW ASSOCIATES, INC.,
                          By its Attorneys,

Date: December 12, 2003          *Janell E. DeGennaro*
                                     Jack J. Mikels, BBO# 345560
                                     Michael A. Wirtz, BBO# 636587
                                     Janell E. De Gennaro, BBO #656306
                                     JACK MIKELS & ASSOCIATES
                                     1 Batterymarch Park, Suite 309
                                     Quincy, MA  02269
                                     Tel:  617.472.5600

## **VERIFICATION**

I, Robert P. Bowen, on oath, do hereby certify that I am President of Bowen Investment, Inc. and that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.

                                        */s/ Robert P. Bowen*
                                        Robert P. Bowen, President
                                        Bowen Investment, Inc.

## VERIFICATION

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey Dew Associates, Inc. and that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.

*Richard J. Bowen*
Richard J. Bowen, President
Honey Dew Associates, Inc.

/mik/hda/lit/SGB/Fed.Ct.Complaint.doc