UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. 03-12509 PBS

BOWEN INVESTMENT, INC. and
HONEY DEW ASSOCIATES, INC.
        Plaintiffs,

v.

S.G.B., LTD.,
GUY BISSONNETTE,
GARY GREAVES and
ROGER A. SPINA,
        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

This trademark action arises from a terminated franchisee's post-termination use of a franchisor's registered trademarks.

Plaintiff, Honey Dew Associates, Inc.'s ("HDA"), is the franchisor of Honey Dew Donuts® Shops and the owner of certain protected trademarks and service marks (the "Marks"). Plaintiff, Bowen Investment, Inc. ("BII"), is a subfranchisor, engaged in licensing franchisees to utilize the Marks in Rhode Island. Defendant, S.G.B., Inc. ("SGB"), was a franchisee of BII, terminated for multiple operational and non-payment defaults. The individual Defendants (the "Guarantors") are SGB's owners, who are jointly and severally liable for the obligations of SGB to BII.

SGB has a history of multiple defaults and a failure to cure the defaults during contractual cure periods and additional cure periods voluntarily provided by BII. When defaults continued, SGB was terminated. Despite termination, SGB continues to operate under the Marks. Injunctive relief is requested.

I.   **BACKGROUND**

On December 17, 1998, SBG obtained its Honey Dew franchise from BII for operation at 343 Providence Street, Warwick, RI. BII had leased the premises from the property owner, an unrelated third party, and prepared the premises for the franchisee. SGB's documentation includes a Franchise Agreement and a Sublease (collectively, the "Franchise Documents").

Pursuant to the Franchise Documents, defendants are required to make by Friday of each week, weekly payments to BII for the week ending the preceding Sunday, as follows: (i) A royalty payment of 7% of gross sales; (b) an advertising fund fee payment of 2% of gross sales; (c) a rent payment of 10% of gross sales; and (d) a Service Fee of $200.00. The Franchise Documents require operation in accordance with standards required by HDA, including an operating manual. The Franchise Documents further provide notice and cure periods for most defaults, including failure to operate in accordance with the operating manual and failure to report sales and make payments.

Throughout its term, SGB has had numerous Notices of Default issued for nonpayment, as well as several Notices of Default for operational deficiencies. In June, 2003, SGB was terminated. Despite the termination, SGB was given an opportunity to cure its defaults. In August, 2003, BII filed a state court action to compel timely reporting of gross sales and timely payments. SGB failed to answer and was defaulted.

In November, 2003, new Notices of Default were issues and, again, SGB was given an additional opportunity to cure its defaults. Eventually, new Termination Notices followed.

Defendants have continued to operate their businesses and are doing so under the Marks. A Cease and Desist letter was forwarded to SGB on December 1, 2003. Follow-up inspections have revealed that Defendants continue to operate and continue to utilize the Marks.

Additionally, as BII is the tenant of the premises, BII continues to be liable to the Landlord for all payments, even though BII is not receiving all payments due from SGB.

## II.   ARGUMENT

Plaintiffs seek injunctive relief, compelling the premises to be turned over the BII and enjoining Defendants' continued use of the Marks.

### A.   Defendants should be enjoined from infringing Plaintiff's Marks during the pendency of this action.

The Defendants' continued use of HDA's Marks is a clear violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and §1125(a), and related state laws. Plaintiffs are entitled to have Defendants enjoined from such infringement. A franchisor's loss of control over its trademarks and goodwill due to a terminated franchisee's continued use of the name and marks constituted an injury for which there was no adequate remedy at law. Re/Max North central Inc. v. Cook, CCH ¶11,976 at 33,720 (E.D. WI 2000). This type of injury cannot easily or precisely be measured by an award of damages.

Injunctive relief is appropriate in a trademark infringement case upon a showing that: (1) Plaintiff[s] will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on the defendant[s]; (3) Plaintiff[s] have a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of the injunction. Camel Hair and

3

Cashmere Inst. Of America, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 10 (1st Cir. 1986).

These standards are uniformly applied in franchise cases to prevent post-termination use of the franchisor's trademarks by a terminated franchise. E.g., MacDonald's Corp. v. Robertson, CCH Franchise Reporter ("CCH") ¶11,457 at 30-891(11th Circuit, 1998); Burger King Corporation v. Mason, 710 Fed. 2nd 1480, 1493 (11th Cir. 1983); Sonana Systems, Inc. v. Ramada Franchise Systems, Inc., CCH ¶12,254 at 35211 (M.D. Florida 2002); Re/Max North Central, Inc. v. Cook, CCH ¶12,164 at 34,782 (E.D. WI 2001); Baskin-Robbins USA, Co. v. Mac 11 Enterprises, Inc., CCH ¶11,882 at 33,253 (NY Sup. Ct. 2000); ERA Franchise Systems, Inc. v. Logan & Logan Associates, Inc., CCH ¶11,512 at 31,234 (E.D. PA 1998). One Federal Court of Appeals has held it to be reversible error not to grant a preliminary injunction is such a case. S&R Corp. v. Jiffy Lube International, Inc., 968 Fed. 2nd 371 (3rd Circuit 1992), and others have ruled that an injunction should even be granted even where the franchisee stopped the infringing misconduct, due to the possibility of future violations. Heaton Distrib. Co. v. Union Tank Car Co., 387 F. 2d 477, 486 (8th Circuit 1967); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 Fed. 2d, 11382, 1135-36 (9th Circuit 1986); Burger King Corp. v. Waiver, CCH ¶11,511 at 31, 231 (S.D. Fl. 1998); E.&J. Gallo Winery v. Consorzio del Gallo Niro, 782 F.Supp. 457, 468 (N.D. CA 1991); Clayton v. Howard Johnsons's Franchise System, Inc., 730 F.Supp. 1553, 1558 (M.D. FL. 1988).

**1. There is a substantial likelihood that Plaintiff will prevail on the merits of their Post-termination trademark infringement claims.**

In the First Circuit, "to win a trademark case [under 15 U.S.C. §§ 1114 or 1125(a)], a plaintiff must show (1) that he uses, and thereby 'owns' a mark (2) that the

defendant is using that same or a similar mark and (3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff." DeCosta v. Viacom Int'l Inc., 981 F.2d 602, 605 (1st Cir. 1992), *cert. denied*, 509 US 923 (1993). In Massachusetts[1], "[t]he continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue. Dunkin' Donuts Incorporated v. Gav-Stra Donuts, Inc., 139 F.Supp. 2d 147 (D. Ma. 2001).

The central issues in most infringement cases is whether the alleged infringing use creates a likelihood of confusion. *Id.* at 54; citing Boston Athletic Ass'n v. Sullivan, 867 F.2d 22 (1st Cir. 1989); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F. 2d. 482 (1st Cir. 1981)[2]. "[F]alsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement." Professional Golfers Ass'n of America v. Bankers Life & Casualty Co., 514 F.2d 665, 670 (5th Cir. 1975). Trademark infringement claims are not simply limited to imitation of another's mark, infringement also occurs when a party misleads the public into believing that he or she is sponsored or approved by a trademark owner by using the owner's trademarks without authorization. See, e.g. Baskin-Robbins USA, Co. v. Mac 11 Enterprises, Inc., CCH ¶11,882 at 33,253 (N.Y. Sup. Ct. 2000) (enjoining post-termination use of franchisor's trademarks); *See also* Re/Max North Central, Inc. v. Cook, CCH ¶12, 164 at 34,782 (E.D. WI 2001) (Granting post-termination injunction to prevent continued use of trademarks). "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use

---

[1] The Franchise Agreement in the case at bar applies Massachusetts law.

[2] The analysis under federal and state actions is largely the same. *Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48 (D.Mass. 1993).

5

the former franchisor's trademarks." Burger King Corporation v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983). Here, the Defendants' use of the Plaintiff's Marks was without authorization or consent post-termination. Under such circumstances, consumer confusion is a given. See Id. at 1493; citations omitted.

A franchisor is entitled to injunctive relief "if it can adduce sufficient facts indicating that its termination of [the franchisees'] franchises was proper." S&R Corp. v. Jiffy Lube International, Inc., 968 F.2d 371, 375 (3rd Cir. 1992). Here, Plaintiff BII was justified in terminating Defendants' franchise since the Defendants failed to meet their payment obligations or report sales, or correct operational deficiencies, as required by the Franchise Agreements.

### 2.  Plaintiff will suffer irreparable injury if the injunction is not granted.

Irreparable harm falls from unlawful trademark as a matter of law. McDonald's Corporation v. Robertson, 147 Fed 3rd 1301, 1310 11th Circuit 1998) ("that the Plaintiff will suffer irreparable injury absent an injunction precluding the alleged trademark infringement flows inexorably from the Plaintiff's likelihood of success on the merits."); Sosciete Des Produits Nestle v. Casa Halvetia 982, Fed 2nd 633, 640 (1st Circuit 1992); E. Remie Martin & Co. v. Shaw Ross International Imports, 757 Fed 2nd 1525, 1530 (11th Circuit 1985); Powertess Petroleum Distributors v. Calcu Gas, 754 Fed 2nd 1991, 1995 (2d Cir. 1985). There is considerable authority for the view that the irreparable injury requirement is satisfied once it is shown that the defendant is wrongfully trading on the plaintiff's reputation." Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 10, 14-15 (1st Cir. 1986); citations omitted; According to

relevant cases, infringement is recognized as irreparable injury since it adversely affects the reputation, and thus the goodwill of the Mark's owner which is not fully compensable with monetary damages. Id. at 14-15.

It is clear that the Defendants' use of the Plaintiff HDA's Marks will mislead consumers to believe that Defendants' store is licensed and regulated by the Plaintiff HDA. Any shortcomings would be attributable to Plaintiff HDA's goodwill. Even if the Defendants' products are of high quality, Plaintiff HDA is justified in insisting that its reputation not be imperiled by the acts of another. See International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d, 1079, 1092 (7th Cir. 1988).

Plaintiffs will suffer irreparable damage in that it will may suffer loss of customers, loss of trade and locational goodwill, damages which, by their nature are incapable of precise quantification. See Ross-Simon of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 (1st Cir. 1996) ("Loss of goodwill is "often held to be irreparable."); Eli Lilly & Co. v. National Answers, Inc., 233 F 3rd 456, 469 (7th Cir. 2000); Meridan Mutual Insurance Company v. Meridian Insurance Group, Inc., 128 F 3rd 1111, 1114 (7th Cir. 1997), Wesley Jessen Division of Sharon Corp., 698 F 2d 862, 867 (7th Cir. 1983). "Even if the infringer's products are of high quality, the Plaintiff can properly insist that its reputation should not be imperiled by the acts of another." International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F 2d, 1079, 1092 (7th Cir. 1988).

### 3. **The injury to Plaintiff outweighs any injury the Defendants may suffer.**

The nature of loss to the Plaintiffs is severe. There is no loss to the Defendants in denying them the right to utilize someone else's trademarks, since they have no right to operate in violation of law. Moreover, as to the injunctions which would close the

business, this was a situation of their own creation, so they have no equitable right to complain of a harm of their own making. All of the case law cited in this memorandum supports a finding that the harm to the Plaintiffs outweighs any injury to the Defendants in granting the requested injunctions.

### 4.   The public interest mandates granting of the injunction.

Trademark law seeks to vindicate the public interest by avoiding confusion in the marketplace. SunAmerica Corp. v. Sun Life Assurance Company of Canada, 77 Fed 3rd, 1325, 1334 (11th Circuit 1996). The public interest will be protected by granting the injunctive relief. The public interest is best served when each member can purchase branded products with the confidence that those Marks represent the commitment to quality of the company that stands behind them. Calamari Fisheries, Inc. d/b/a The Daily Catch v. The Village Catch, Inc. d/b/a The Village Catch, et al, 698 F. Supp. 994 (D. MA. 1988). Here, the Defendants' infringement is misleading to the public consumers into believing that their products and services are connected with the Plaintiff's franchise. This "confusion resulting from the concurrent use of identical trademarks clearly creates a risk that consumers will receive something other than that which they paid for – a risk that is particularly striking, where, as here there is credible evidence that the confusion could lead to consumption of a product which is unsafe or, at a minimum, of lesser quality than expected." McDonald's supra, at 30,087. The risk of confusion is considered likely when a franchisee continues to use the franchisor's trademarks after termination. S&R Corp. v. Jiffy Lube Int'l Inc., 968 F2d 371, 376 (3rd Cir. 1992); Two Men and a Truck/Int'l Inc. v. Two Men and a Truck/Kalamazoo Inc., 1995 U.S. Dist Ct. Lexis 11295 (W.D. MI 1995).

B.    **Defendants must vacate the Franchised Premises.**

The Franchise Documents require the Defendants to peaceably give up franchised premises. See Section XXI of the Franchise Agreement. Such extraordinary relief is generally granted in franchise cases due to the nature of the underlying relationship. All franchise systems would collapse if franchisees were entitled to a reward for violating their agreements by continuing in the identical business at the same locations. Moreover, in this case, Plaintiffs would further be harmed because they hold the Lease for the premises, are required to pay the property owner for premises of which they are not in possession Plaintiffs' goodwill would erode unless possession is transferred, as set forth in the Franchise Agreement See, e.g., ServiceMaster Residential/Commercial Services L.P. v. Proctor, CCH¶12,252 at 35, 208 (D. Nebraska 2002); New Eden, LLC v. Bio Earth, Inc., CCH ¶11,944 at 33,556, 33,562 (N.D. Ok 2000); Maaco Enterprises, Inc. v. Scott S. Brimmer & Service and Supply Group, Ltd., CCH ¶11, 498 at 31, 178 (E.D. PA. 1998) (otherwise integrity of the system would be impaired and the defendant could be unjustly enriched by using the knowledge and experience gained to serve former and potential customers of Maaco); EGATL International, Inc. v. Mohammed Baradar, CCH ¶11,345 (D. MD 1997) (allowing breakaway franchisee to continue operation would unravel plaintiff's entire franchise system); Jiffy Lube International, Inc. v. Weiss Brothers, Inc., 834 Fed. Supp. 683, 692-93 (D. NJ 1993) (Failure to grant injunctive relief could impede the plaintiff from enforcing provisions of similar agreements against other franchisees); Economou v. Physicians Weight Loss Centers of America, 756 Fed. Supp. 1024, 1039 (N.D. Ohio 1991); ServPro Industries, Inc. v. Pizzillo, 2001 Westlaw 120731

(Tenn. Ct. App. 2001). The good will of Honey Dew Donuts Shops will be irreparably damaged if the defendants are allowed to continue operating in their current location.

## III. CONCLUSION

For all of the foregoing reasons, the Plaintiffs, Bowen Investment, Inc. and Honey Dew Associates, Inc., are entitled to the injunctive relief requested.

WHEREFORE, the Plaintiffs request this Honorable Court grant its motion and issue injunctions against the Defendants.

                                                Respectfully Submitted by the Plaintiffs,
                                                BOWEN INVESTMENT, INC.,
                                                HONEY DEW ASSOCIATES, INC.,
                                                By its Attorneys,

Date: December 12, 2003                    /s/ Janell E. DeGennaro
                                                Jack J. Mikels, BBO# 345560
                                                Michael A. Wirtz, BBO# 636587
                                                Janell E. De Gennaro, BBO #656360
                                                JACK MIKELS & ASSOCIATES
                                                1 Batterymarch Park, Suite 309
                                                Quincy, MA 02269
                                                Tel: 617.472.5600

F:\A-mikels\HDA\Lit\SGB-FedCtMemoLaw